## EKBERG et ux. v. BATES et ux.

No. 7509.  Decided December 19, 1951.  (239 P. 2d 205.)

See 11 C. J. S., Boundaries, sec. 116. Boundary established by fence. 8 Am. Jur., Boundaries, sec. 82; 170 A. L. R. 1144.

*Ivins, Roe, Kirby & Stark* and *Edwin A. Adamson,* all of Salt Lake City, Utah, for appellants.

*Hanni & Boyle* and *R. A. McBroom,* all of Salt Lake City, for respondents.

WADE, Justice.

This case involves a boundary line dispute. Oscar F. Ekberg and his wife, who are the owners of some real property facing Harvard Avenue between 3rd and 4th East Streets in Salt Lake City, Utah, and whose south line adjoins the north line of certain real property owned by Von D. Bates and his wife whose property faces Hampton Avenue, brought this suit to quiet title to about 4½ feet of land embraced within a fence line on the Bates property. This 4½ feet according to the record title apparently belongs to the Ekbergs. The Bates claim that a fence which runs in an easterly and westerly direction and located on the southern edge of the Ekberg property is the boundary line between the two properties which has been agreed upon and acquiesced in by the parties and their predecessors in interest for more than fifty years. The lower court found in favor of the Bates and the Ekbergs appeal.

But one question is presented: Does the evidence sustain the court's findings that the true boundary line between appeallants' and respondents' property was uncertain or in dispute and that the picket fence which had been there for over 50 years and which had been replaced in 1927 by a solid board fence by both appellants' and respondents' immediate predecessor's in interest had been acquiesced in as the boundary line between the properties?

There is no dispute as to the facts. Appellants introduced their abstract of title to show record ownership of the claimed ground and rested, whereupon respondents introduced their evidence on their claim that the fence between the properties represented the true boundary line by acquiescence. This evidence consisted of a sidewalk extension plat based upon a sidewalk extension survey made in 1909, which plat though not made for the purpose of determining property lines, shows the property fence lines then existing which lines were determined by some other means. This plat shows that at that time the fence north of appellants' north boundary line was about 115 feet from the fence now claimed as the boundary line by respondents between their properties and that respondents' south boundary was five feet north of its present location as determined by the Atlas plat of 1912 which is the official plat showing property lines. The distance between the claimed boundary fence and the south property line of respondents as shown by the sidewalk plat is about 115 feet. Appellants and respondents deeds each call for about 115 feet in a northerly and southerly direction.

The record discloses that where the present fence which is claimed as the boundary line now stands there had been a picket fence which had been built before 1894. At that time the land now belonging to appellants and respondents all belonged to one owner. It does not appear that any surveys were made by any of the parties to this suit prior to the bringing of this action. As early as about 1920 or 1921, Oscar F. Ekberg, who is one of the appellants herein and whose father at that time owned the property he now owns, had an argument with a neighbor in which he told the neighbor that they were going to make this neighbor move the fence back because it was encroaching on their land. Ekberg, Sr., upon hearing this ordered his son to keep quiet. In 1927 Ekberg, Sr., helped respondents' predecessor in interest replace the old picket fence with a stouter high board fence which is now there and which was

placed on exactly the same line on which the old fence had been. Respondents' predecessor in interest who had built this fence testified that he had considered the fence the boundary line between the properties and had built the stronger, higher fence to keep out the dogs and chickens. Appellant, Ekberg, Jr., both before and after he had acquired the title to his land had always protested that he considered the fence was on their property.

In *Brown* v. *Milliner,* 120 Utah 16, 232 P. 2d 202, 207, which is the latest expression of this court in a case involving a boundary line dispute, many of the cases decided by this court on that question are reviewed and we re-affirmed the doctrine that the owners of adjoining tracts whose true boundary lines are unkonwn, in dispute or uncertain may by parol agreement establish boundary lines which are binding on themselves and their successors in interest but concluded that it did not apply to the facts of that case. We also said therein:

"* * * that in the absence of evidence that the owners of adjoining property or their predecessors in interest ever expressly agreed as to the location of the boundary between them, if they have occupied their respective premises up to an open boundary line visibly marked by monuments, fences or buildings for a long period of time and mutually recognized it as the dividing line between them, the law will imply an agreement fixing the boundary as located, if it can do so consistently with the facts appearing, and will not permit the parties nor their grantees to depart from such line. * * *"

This is so because the doctrine of boundary by acquiescence rests on sound public policy of avoiding trouble and litigation over boundaries.

In the instant case, the evidence is undisputed that the original picket fence was built by a man who owned both appellants' and respondents' tracts of land at that time and therefore it is apparent it was not erected to mark a boundary line. For the portion of that time during which both tracts were owned by the same person, there could be no boundary by acquiescence. However, the court made

another finding in which it found that when the board fence was erected in 1927 the true boundary line was still uncertain and in dispute and that this fence was erected as a boundary fence and acquiesced in as such by the parties hereto and their grantors up until the time this suit was brought.

Appellants contend that the evidence adduced herein is insufficient to sustain this finding because at the time this fence was built a survey could have determined the true boundary line and therefore the element of uncertainty necessary in establishing a boundary line by acquiescence was lacking. In support of this argument they cite *Glen* v. *Whitney*, 116 Utah 267, 209 P. 2d 257. Certain statements in that case seem to support appellants' argument. However, those statements were mere dicta because the fence which was claimed to be the boundary line by acquiescence was built by a man who was a stranger to the title of both tracts of land involved therein and was built for his convenience to prevent the escape of his livestock. In *Willie* v. *Local Realty Co.*, 110 Utah 523, 175 P. 2d 718, this question was decided by this court adversely to appellants' contention. We said therein on page 723 of 175 P.:

"Defendant contends that there was no dispute or uncertainty about the division line in this case because the deeds were clear and certain and each lot had the full frontage called for by the deeds and therefore the rule relating to establishment of boundaries by acquiescence does not apply. It is true that the line called for by the deeds could have easily been ascertained by a survey. However, a boundary line may be 'uncertain' or 'in dispute' even though it is capable of being readily ascertained. The vital question is whether the adjacent owners when they fixed the line or acquiesced in its being fixed were uncertain or in dispute about the location of the actual line."

In the instant case no survey had been made to determine the actual boundary line until after this suit was brought. After the separate tracts had been conveyed by the original

owner to third parties those grantees and their successors in interest had occupied and possessed their separate tracts up to the picket fence line originally built by their common grantor. Each tract of land contained the approximate footage called for by their respective deeds. The property lines in existence in 1909 as shown by the sidewalk plat were about five feet north of their true location as shown by the Atlas plat of 1912. When Ekberg, Sr., helped respondents' immediate predecessor in interest build the fence in 1927 he knew that the original fence line might not be the true boundary line because he had heard his son scrapping with the neighbors about it and claiming that their fence was on his father's property. He knew that respondents' grantor claimed the property up to the fence and therefore when he helped build the new fence he acquiesced in that being the boundary line between the properties involved. He did not convey his property to appellants until 1935. We have here then an actual acquiescence in the fence as a boundary line for 8 years which is more than the period required in our statute of limitations for actions or defenses founded upon real property, see Section 104-2-6, U. C. A. 1943, plus actual occupancy and possession up to the original picket fence by different owners since 1921 when Ekberg, Sr., acquired title to what is now appellants' property from the owner of the tracts now belonging to respondents and appellants. It is true that since Ekberg, Jr., has been the owner of the property he has verbally protested that the fence was not the true boundary line and therefore he probably did not actually acquiescence in it, still he did not take any action to assert ownership until this suit was commenced about 14 years after he acquired the title. Under all these circumstances we are of the opinion the court did not err when it found that the board fence was the boundary line by acquiescence.

The length of time necessary to establish a boundary line by acquiescence has never been definitely established in this jurisdiction. Each case must usually be determined

on its own facts. In other jurisdictions there have been statements made which indicate that the length of time should be at least that prescribed by the statute of limitations. See headnote to annotation in 69 A. L. R. page 1491; *Beardsley* v. *Crane,* 52 Minn. 537, 54 N. W. 740; *Johnson* v. *Trump,* 161 Iowa 512, 143 N. W. 510; and *Kesler* v. *Ellis,* 47 Idaho 740, 278 P. 366, 367, in which case the court there said:

> "* * * While the authorities are hopelessly confused and generally uncertain as to the time the acquiescence as to the location of the boundary line should continue in order to satisfy the rule, it is but logical to say that such acquiescence must continue for a period of not less than five years, thus conforming to the period established by the statute of limitation in cases of adverse possession. * * *"

In the instant case as we have pointed out above there was a period of actual acquiescence for more than 7 years (the Utah limitations period for adverse possession) before appellants acquired their title and under all the circumstances shown herein that was a sufficient length of time to establish the line so that appellants are precluded from claiming that it is not the true line.

Even though there can be no boundary by acquiescence while one person owns both lots, in view of the fact that the evidence was sufficient to sustain a finding that the fence was the boundary line by acquiescence, the error is not prejudicial.

Affirmed. Costs to respondents.

CROCKETT, J., concurs.

WOLFE, Chief Justice (concurring).

Under the facts and circumstances of this case, where there is positive evidence of the establishment of the fence line plus continuing acquiescence thereafter, I am willing to agree that "acquiescence for a long period of time" heretofore required by our doctrine may be as short as seven

years, thus conforming to the period provided by the statute of limitations for actions or defenses founded upon title to real property. 104-2-6, U. C. A. 1943. For the sake of definiteness and expediency, this seems to be the most logical stopping point, upon which to fix the necessary length of time. I, therefore, concur in the opinion and judgment of Mr. Justice WADE.

McDONOUGH, J., concurs in the result.

HENRIOD, J., not participating.